## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONTE RAPLEY** | **: CIVIL ACTION** |
| **v.** | : |
| | **: No. 15-4757** |
| | : |
| **BRIAN V. COLEMAN, *et al.*** | : |
| | : |

**KEARNEY, J**                                                                                            **May 29, 2018**

## MEMORANDUM

After deliberating three days, a Philadelphia county jury deadlocked on whether the Commonwealth proved Donte Rapley guilty of several crimes involving shooting a man. The jury heard skillfully adduced testimony over the prosecutor's hearsay objection from the investigating police officer describing statements from the only witness to the shooting – a homeless woman now missing – who could not identify Mr. Rapley as the shooter. Immediately before retrial on the deadlocked charges, Mr. Rapley's counsel moved to preclude the missing witness' statements to the officer as hearsay, the Commonwealth consented, and the state court precluded testimony regarding the missing witness' statements in the second trial. The second jury convicted Mr. Rapley after deliberating for approximately three hours.

After losing his appeals from the second jury's verdict and denials of post-conviction relief in the Pennsylvania courts, Mr. Rapley now petitions for a writ of *habeas corpus* claiming, among other grounds, his counsel's motion before the second trial to preclude the missing witness's statements deprived him of his Sixth Amendment right to effective assistance of counsel. The undisputed record reads and sounds like one of those unique cases where we can fairly characterize the defense counsel's conduct as objectively unreasonable especially given the different verdicts in trials one and two. But even assuming we can find deficient lawyer conduct,

obtaining *habeas* relief based on ineffectiveness of counsel is never an easy task. This task is rendered more difficult when the defense counsel moved to preclude hearsay evidence immediately before the second trial. A court should preclude this hearsay statement unless the declaring witness could be found, the officer somehow volunteered the witness' hearsay statement, or defense counsel could induce inconsistent non-hearsay testimony from the officer and then impeach him based on his testimony in the first trial.

These are conceivable possibilities. But the Supreme Court requires more than conceivable possibilities to show the required prejudice caused by defense counsel's objectively unreasonably conduct. To grant *habeas*, we need to find a substantial probability the outcome of the second trial would have been different based on the totality of the evidence had the defense counsel not moved to exclude the missing witness' hearsay statements to the testifying officer. We cannot make this finding after an evidentiary hearing and considerable study.

Mr. Rapley's remaining *habeas* challenges lack merit. We deny his petition for *habeas* relief in the accompanying Order. We also deny a certificate of appealability.

## I. Relevant facts adduced from the state court record and evidentiary hearing.

On August 5, 2007, Gayon Wilson accidentally left his keys in the driver side door of his car parked nearby his Philadelphia home. Later that evening, Mr. Wilson discovered his car missing. Mr. Wilson immediately called the police. While waiting for the police, Mr. Wilson noticed a child from the neighborhood driving his car slowly down the street. Mr. Wilson chased down the child. The child explained another woman stole the car. The child led Mr. Wilson to the woman. Mr. Wilson recognized the woman from his neighborhood as Latoyia Williams. Ms. Williams immediately ran after she noticed Mr. Wilson walking towards her. Mr. Wilson

2

chased Ms. Williams down and grabbed her by her shirt collar. Ms. Williams immediately apologized.

While escorting Ms. Williams back towards his car, Mr. Wilson noticed a man, later identified as Donte Rapley, jump over a fence and walk in his direction. After walking by Mr. Rapley, Mr. Wilson heard a noise he described as "pop, pop." Mr. Wilson immediately turned around and observed Mr. Rapley pointing a gun at him. Mr. Wilson, not yet aware he had just been shot, had a short conversation with Mr. Rapley. Mr. Rapley demanded Mr. Wilson let Ms. Williams go. Mr. Wilson released Ms. Williams and Mr. Wilson ran away down the street. While running, Mr. Wilson noticed a pain in his back, looked down towards his stomach, and observed a bullet protruding from his skin. Philadelphia Police Officer Miguel Figueroa transported him to Temple University Hospital. Mr. Wilson received emergency surgery at Temple and survived the shooting. After Mr. Wilson recovered from his injury, Detective Derrick Venson met with Mr. Wilson and presented him with a photo array to identify the gunman.[1] Mr. Wilson identified Mr. Rapley as the gunman.[2]

### *A jury finds Mr. Rapley not guilty of attempted murder and deadlocks on remaining charges.*

After an investigation, the Commonwealth charged Mr. Rapley with attempted murder, aggravated assault, uniform firearms act violations, possession of an instrument of crime, simple assault, recklessly endangering another person, and terroristic threats. The Honorable Earl W. Trent, Jr. began the jury trial on October 3, 2008 in the Philadelphia County Court of Common Pleas.

Because neither party could find Ms. Williams before trial, she did not testify at trial. But both Mr. Rapley's trial counsel and the Commonwealth adduced Ms. Williams's statements

3

to police detectives during their investigation through examination of the detectives. Immediately before the first detective testified on October 6, 2008, the Commonwealth disclosed for the first time to Mr. Rapley's trial counsel police detectives located and questioned Ms. Williams and she identified a different person from Mr. Rapley as the gunman. The Commonwealth also disclosed for the first time Ms. Williams later recanted on her identification and asked for money in exchange for identifying the actual gunman. The Commonwealth provided Mr. Rapley's trial counsel a copy of the photo array presented to Ms. Williams and a copy of the photo Ms. Williams selected as portraying the gunman. In response to this newly disclosed evidence, Mr. Rapley's trial counsel moved for mistrial arguing the Commonwealth committed a *Brady*[3] violation by failing to disclose exculpatory evidence. Judge Trent denied Mr. Rapley's motion for mistrial. Despite efforts from both Mr. Rapley and the Commonwealth, we do not have a transcript of trial counsel's motion for mistrial or Judge Trent's ruling. We do not know why Judge Trent denied the mistrial motion.

After Judge Trent denied a mistrial, Detectives Derrick Venson and Robert Kerwin testified regarding their interactions with Ms. Williams during their investigation into the August 5 shooting. Detective Venson testified to the difficulty of locating Ms. Williams during the investigation because Ms. Williams was homeless.[4] Eventually, Detective Venson located, arrested, and questioned Ms. Williams.[5] Detective Venson testified Ms. Williams first denied having information about the shooting.[6] But eventually Ms. Williams talked. Despite a hearsay objection from the Commonwealth, Judge Trent allowed Detective Venson to testify on cross Ms. Williams provided a description of the gunman which did not match Mr. Rapley's physical traits.[7] Finding trial counsel opened the door, Judge Trent allowed the Commonwealth to present more of Ms. Williams's statements on re-direct. Detective Venson explained Ms. Williams

4

picked out a photograph of a person she claimed to be the gunman, but Ms. Williams did not identify Mr. Rapley.[8]  But Detective Venson also testified Ms. Williams returned two or three days later and admitted she identified the wrong person as the gunman.[9]  Detective Venson testified Ms. Williams said she had to be honest and admit she picked out the wrong person.[10] Detective Venson testified Ms. Williams again contacted him a few days later and offered to identify and locate the actual gunman, if Detective Venson paid her one hundred dollars.[11] Detective Venson did not meet or speak with Ms. Williams again after she made her offer.[12]

Detective Kerwin confirmed he and Detective Venson showed Ms. Williams a photo array for her to identify the gunman.[13]  Detective Kerwin testified Ms. Williams identified a person different from Mr. Rapley as the gunman.[14]  Detective Kerwin testified Ms. Williams later recanted on her identification and offered to identify the actual gunman if paid $100.[15] Detective Kerwin testified he told Ms. Williams the police could pay her if she identified the actual gunman.  Mr. Wilson then identified the same person and the police took the identified person into custody.[16]  Detective Kerwin did not testify to any further interactions with Ms. Williams.

Mr. Wilson also testified at trial.  Mr. Wilson summarized the events on August 5 and identified Mr. Rapley in court as the gunman.  Officer Miguel Figueroa – the officer who transported Mr. Wilson to Temple – testified to his actions in response to the shooting.  Finally, Mr. Rapley testified he could not remember where he was on August 5, but denied shooting Mr. Wilson.

After three days of evidence and three days of deliberation, the jury found Mr. Rapley not guilty of attempted murder and deadlocked on the remaining counts of aggravated assault,

5

uniform firearms act violations, possession of an instrument of crime, simple assault, recklessly endangering another person, and terroristic threats.

### *Trial counsel moves to compel information relating to Ms. Williams.*

Immediately after the first trial, Mr. Rapley's trial counsel moved to compel, among other things, (1) disclosure of all oral and written statements of Ms. Williams; (2) all documents and information pertaining to the investigation into the gunman initially identified by Ms. Williams; and (3) a statement from Detective Venson under oath regarding his interactions with Ms. Williams.[17]   Trial counsel did not receive a written statement by Ms. Williams because the Commonwealth did not take a written statement from Ms. Williams.[18]   But trial counsel did interview Detective Venson.[19]   Trial counsel documented Detective Venson's statement in a memorandum to her file.[20]

Detective Venson's representations matched his trial testimony from the first trial regarding his interactions with Ms. Williams.   Detective Venson confirmed the photo array shown to Ms. Williams did not include Mr. Rapley's photo.[21]   But Detective Venson added he did not investigate the gentleman identified by Ms. Williams beyond searching his name and finding his address.[22]   Detective Venson did not interview the identified gentleman.[23]   Trial counsel bolded the sentence in her memorandum, **"Latoya [sic] Williams never picked out Donte or gave Detective Donte's name."**[24]   Detective Venson also explained the mother of the minor who drove Mr. Wilson's car on August 5 helped him find Ms. Williams and Detective Venson received a phone call from an unidentified person who gave a description of Ms. Williams.[25]   Detective Venson knocked on doors in the neighborhood where the shooting took place and asked residents about the shooting, but no one provided information.[26]   An informant

later told Detective Venson "the word on the street" is a man named "Te" shot Mr. Wilson, "Te" left the neighborhood, and "Te" shot Mr. Wilson to protect Ms. Williams.[27]

### *Defense counsel successfully moves to preclude Ms. Williams's statements immediately before the second trial.*

The Commonwealth re-tried Mr. Rapley on the deadlocked charges from the first trial on January 27 through 29, 2009.

Immediately before the start of the second trial, Mr. Rapley's trial counsel, with the Commonwealth's consent, moved *in limine* to exclude Ms. Williams's out of court statements, including Ms. Williams's statements identifying someone different from Mr. Rapley as the gunman, her statements recanting her identification, and her offer to identify the actual gunman in exchange for $100:

[MR. RAPLEY'S COUNSEL]:   Your Honor, this will be brief.   I think [the Commonwealth] and I agreed that the first motion in limine that I have is to keep out anything testimonial in nature from Ms. Latoyia Williams.

[THE COMMONWEALTH]: That's correct, Your Honor. We will just mention her, of course, because – we will just mention her name and how she figures into this, but certainly nothing that she said will come in.

[MR. RAPLEY'S COUNSEL]: Right.

THE COURT: Okay.

[THE COMMONWEALTH]: I think we agreed on that.

[MR. RAPLEY'S COUNSEL]: That's basically it. I don't think either of us has found her so that she will be called. If my office somehow miraculously finds her by tomorrow,

we will anticipate calling her as a witness. But other than that, we're just asking that all the hearsay not come in.

[THE COMMONWEALTH]: I have no problem with that, Your Honor.

THE COURT: All right. So that's granted. Motion in limine granted with respect to any statements from Ms. Latoyia Williams. All right. That's it?[28]

At the second trial, Mr. Wilson, Detective Venson, Officer Figueroa, and Dr. Paula Pieri, Mr. Wilson's surgeon at Temple, testified. Detective Kerwin did not testify at the second trial. Mr. Wilson summarized the events of August 5, 2007 and his identification of Mr. Rapley. Detective Venson testified to his investigation into the shooting and Mr. Wilson's identification of Mr. Rapley. Officer Figueroa testified to his interaction with Mr. Wilson immediately after the shooting. Dr. Pieri testified to Mr. Wilson's emergency treatment at Temple. Neither party adduced Ms. Williams's statements as agreed pre-trial.

## *The jury finds Mr. Rapley guilty in the second trial.*

The jury began deliberating at the end of January 28 for just over an hour and returned on January 29 to deliberate for another hour. The jury found Mr. Rapley guilty of aggravated assault, carrying a firearm without a license, and possessing an instrument of crime. Mr. Rapley waived his right to jury trial on the possession of a firearm prohibited under the Uniform Firearms Act charge and Judge Trent found Mr. Rapley guilty of the violation.

Judge Trent scheduled Mr. Rapley's sentencing hearing for March 17, 2009. The court continued Mr. Rapley's sentencing several times due to the court's scheduling conflicts and on one occasion the Department of Corrections failed to transport Mr. Rapley to court the day of his sentencing. Judge Trent sentenced Mr. Rapley on June 30, 2009. Judge Trent sentenced Mr. Rapley to 15 to 30 years incarceration: 10 to 20 years for aggravated assault; 5 to 10 years on the

violation of the Uniform Firearms Act to run consecutively with the 10 to 20 years for aggravated assault; 3.5 to 7 years for carrying a firearm without a license to run concurrent with the 5 to 10 years for the Uniform Firearms Act violation; and 2 to 4 years for the possessing an instrument of crime to run concurrent with the 3.5 to 7 years for carrying a firearm without a license. Judge Trent's sentence deviated from Pennsylvania's sentencing guidelines with respect to the aggravated assault and violation of the Uniform Firearms Act convictions.

### *Mr. Rapley seeks post-conviction relief.*

Mr. Rapley appealed Judge Trent's judgment of sentence. The Pennsylvania Superior Court affirmed and the Pennsylvania Supreme Court denied Mr. Rapley's petition for allowance of appeal. Mr. Rapley petitioned for relief *pro se* under the Post Conviction Relief Act ("PCRA") asserting an ineffective assistance of counsel claim against trial counsel for failing to investigate and call Ms. Williams at trial and moving *in limine* to exclude Ms. Williams's statements at the second trial. But Mr. Rapley later obtained PCRA counsel and PCRA counsel amended Mr. Rapley's PCRA petition. PCRA counsel excluded the ineffectiveness argument. The PCRA court dismissed Mr. Rapley's amended petition without a hearing. The Pennsylvania Superior Court affirmed the dismissal and the Pennsylvania Supreme Court denied Mr. Rapley's petition for allowance of appeal.

Mr. Rapley timely petitioned *pro se* for writ of *habeas corpus* under 28 U.S.C. § 2254 arguing, among other things, trial counsel provided ineffective assistance of counsel by failing to investigate Ms. Williams before trial and failing to call her as a witness at trial.

Following review of the facts, we appointed *habeas* counsel for the purpose of evaluating the merits of the *pro se habeas* petition.[29] We ordered Mr. Rapley's newly appointed counsel to

9

file a supplemental memorandum focusing on the alleged ineffectiveness of trial and PCRA counsel relating to the investigation or interview of Ms. Williams or a supplemental notice advising of another position.[30] We allowed the Commonwealth to file a response to Mr. Rapley's supplemental memorandum to address this ineffectiveness issue.[31]

### *We held an evidentiary hearing regarding Mr. Rapley's ineffective assistance claim.*

Following our review of the supplemental memorandum, we held an evidentiary hearing addressing trial counsel's conduct in investigating Ms. Williams, securing Ms. Williams's testimony for trial, moving *in limine* to exclude Ms. Williams's statements at the second trial, and Mr. Rapley's PCRA counsel's failure to incorporate Mr. Rapley's *pro se* ineffective assistance argument based on trial counsel's motion *in limine* excluding Ms. Williams's statements at the second trial.

Both Mr. Rapley's trial counsel and PCRA counsel testified at our evidentiary hearing. Trial counsel worked for the Defender's Association of Philadelphia.[32] Before the Defender's assigned trial counsel to Mr. Rapley's case, another attorney at the Defender's interviewed Mr. Rapley and on November 11, 2007 completed an investigation request form to submit to the Defender's investigator.[33] The investigation request form sought an investigator locate and interview Ms. Williams regarding the events on August 5, 2007.[34] The request did not list an address or other contact information for Ms. Williams.[35] The attorney requested an investigator ask Ms. Williams whether she knew Mr. Rapley and whether she could identify Mr. Rapley as the gunman.[36] But the investigation request never reached the investigator.[37] Under Defender's policy, a supervisor had to approve the investigation request before the request reached the

10

investigator.[38]  On November 28, 2007, in response to this investigation request, the supervisor responded, "Are you kidding? How are we supposed to do that? Perhaps after discovery."[39]

On September 22, 2008, trial counsel emailed the Commonwealth explaining the Defender's recently assigned her the case and requested, among other things, contact information for Ms. Williams and any written statements by Ms. Williams, as "she is obviously a very important witness for [Mr. Rapley]."[40]  Trial counsel did not have a response to her email from the Commonwealth in her file.[41]   On September 24, 2008, trial counsel submitted an investigation request form requesting her office's investigator locate and interview Ms. Williams.[42]  Trial counsel included an address for Ms. Williams at Kingsessing Avenue, which trial counsel identified as Ms. Williams's boyfriend's mother's home.[43]  Trial counsel also listed two phone numbers for Ms. Williams's boyfriend's mother.[44]  The investigator did not find Ms. Williams at the Kingsessing Avenue address.[45]  Ms. Williams's boyfriend's mother did not cooperate with the investigator.[46]  The mother spoke with the investigator over the telephone and explained her son did not associate with Ms. Williams anymore and refused to provide her son's name to the investigator.[47]

On September 30, 2008, the Commonwealth faxed trial counsel copies of Federal Bureau of Investigation's National Crime Information Center records search reports of Ms. Williams.[48]  Ms. Williams did not have a criminal record in the database.  Trial counsel admitted to receiving a biographical information report completed by the Philadelphia Police Department in September 2007 as part of the Commonwealth's pre-trial discovery.[49]  The biographical report included Ms. Williams's date of birth, height, weight, hair color, eye color, complexion, build, address, and social security number.[50]  The address listed in the biographical report matched the Kingsessing Avenue address trial counsel provided the investigator.

Before the first trial, Mr. Rapley's trial counsel also searched through "court histories" to find records on Ms. Williams.[51] Trial counsel found a record for a "Latoyia Williams" and trial counsel ordered a copy of the arrest photo.[52] But after receiving the photo, trial counsel observed the photo did not match the arrest photo of Ms. Williams taken by Detective Venson when he brought Ms. Williams in for questioning.[53]

At our evidentiary hearing, trial counsel testified as to her decision to move *in limine* at the second trial to exclude Ms. Williams's statements to Detectives Venson and Kerwin adduced at the first trial. Trial counsel testified, "I don't remember specifically, but my educated guess is that I was nervous that the detective was going to testify that [Ms. Williams] pointed them in the direction of [Mr. Rapley]. I still, to this day, do not know how [Mr. Rapley] got into the photo array originally. I think I just – I didn't know what the detective was going to testify to."[54] In response to a question whether Ms. Williams's statements could be classified as a "double-edged sword," trial counsel responded, "Sure. I mean I certainly wanted the information that she initially identified somebody else to be given to the jury. I thought that was important, but for some reason, I guess I didn't think it was as important the second trial as risking something bad coming out."[55] Trial counsel further stated, "As in my ideal world the exculpatory information comes in, but the recantation doesn't come in."[56]

Trial counsel confirmed Detective Venson and Detective Kerwin were available to testify at the second trial.[57] In response to a question whether trial counsel thought she could impeach the detectives at the second trial should they have changed their testimony from the first trial, trial counsel responded, "That's a good question and I thought of that. I don't know why I wouldn't have just been able to impeach them with either their first trial testimony or the memo – the notes that I took."[58]

Mr. Rapley's PCRA counsel testified to his actions in representing Mr. Rapley in the PCRA proceeding. Mr. Rapley filed a *pro se* PCRA petition which included an argument trial counsel provided ineffective assistance of counsel because she failed to investigate Ms. Williams's location and to call her as a witness, and she moved *in limine* to preclude Ms. Williams's statements at the second trial.[59] PCRA counsel filed an amended PCRA petition which did not incorporate Mr. Rapley's ineffective assistance arguments.[60]

Following his appointment to Mr. Rapley's case, PCRA counsel sent Mr. Rapley a letter introducing himself and giving his initial thoughts on Mr. Rapley's arguments in his *pro se* PCRA petition.[61] Mr. Rapley sent PCRA counsel a letter in response providing further details in support of his *pro se* arguments.[62] With respect to his argument relating to Ms. Williams, Mr. Rapley explained he could not provide PCRA counsel information as to Ms. Williams's current location.[63] But Mr. Rapley explained how trial counsel adduced Ms. Williams's identification of a different man in the first trial.[64] Mr. Rapley believed trial counsel's provided ineffective assistance by failing to adduce the same identification evidence at the second trial.[65]

PCRA counsel responded to Mr. Rapley by letter identifying two issues he believed prevented him from including an ineffectiveness argument in the amended PCRA petition.[66] First, PCRA counsel explained trial counsel represented at trial she attempted to locate Ms. Williams but failed.[67] PCRA counsel explained trial counsel's failure to locate Ms. Williams alone did not constitute ineffective assistance.[68] Second, PCRA counsel believed he could not pursue an argument relating to Ms. Williams without locating her to prove her testimony would have been helpful to Mr. Rapley.[69]

In response, Mr. Rapley raised an important distinction regarding his ineffectiveness argument by separating the claim into two arguments.[70] First, trial counsel provided ineffective

13

assistance by failing to investigate Ms. Williams pre-trial because the private investigator refused to go into a "high crime area."[71] But critically, Mr. Rapley also explained trial counsel erred by not adducing Ms. Williams's statements at the second trial.[72] Mr. Rapley cites his *pro se* PCRA petition identifying trial counsel's motion *in limine* as a basis for an ineffective assistance claim.[73] Mr. Rapley again requested PCRA counsel include an argument trial counsel provided ineffective assistance by moving *in limine* to preclude Ms. Williams's statements at the second trial.[74]

PCRA counsel responded attaching a copy of the amended PCRA petition he filed on Mr. Rapley's behalf the day before.[75] PCRA counsel told Mr. Rapley he did not include an ineffectiveness argument in the amended petition.[76] PCRA counsel again cited to trial counsel's representation she could not locate Ms. Williams. PCRA counsel also explained trial counsel seemed reluctant at the second trial to adduce Ms. Williams's statements, which he characterized as "hearsay."[77] PCRA counsel explained hearsay statements are generally not admissible at trial.[78] PCRA counsel concluded he could get an investigator to attempt to find Ms. Williams "to make an issue out of it", but needed information other than her name to provide to the investigator.[79]

Mr. Rapley responded to PCRA counsel after his review of the counseled amended PCRA petition.[80] With respect to Ms. Williams, Mr. Rapley explained he did not have further information to help an investigator locate her.[81] Mr. Rapley stated he is still in the process of trying to find information about her location.[82] Mr. Rapley again clarified what he believed to be a critical issue relating to Ms. Williams: his trial counsel moving *in limine* to exclude Ms. Williams's identification of a different person against Mr. Rapley's objection.[83]

At our evidentiary hearing, PCRA counsel testified he did not hire an investigator to attempt to locate Ms. Williams because PCRA counsel felt he did not have sufficient information to provide to an investigator to track Ms. Williams down.[84] PCRA counsel did "Google" Ms. Williams's name but did not succeed in finding any information because "while the first name is moderately distinctive, the last name is not distinctive at all."[85] PCRA counsel also searched for Ms. Williams on Facebook.[86] PCRA counsel did not contact trial counsel to learn whether trial counsel had information relating to Ms. Williams's whereabouts and did not review pre-trial discovery from the Commonwealth to search for information about Ms. Williams.[87] Based on trial counsel's representations at the second trial she could not find Ms. Williams, PCRA counsel presumed the information exchanged in discovery would not be helpful in locating Ms. Williams.[88]

PCRA counsel explained he did not incorporate Mr. Rapley's *pro se* ineffective assistance argument because PCRA counsel did not have Ms. Williams's location to secure her testimony for an evidentiary hearing on the PCRA petition.[89] PCRA counsel believed he could not prove prejudice under *Strickland v. Washington*[90] without producing Ms. Williams to establish her testimony would have been favorable to Mr. Rapley.[91]

PCRA counsel explained further information about Ms. Williams, such as Ms. Williams's relatives or associates, would have been helpful to locate Ms. Williams.[92] When asked whether PCRA counsel knew the pre-trial discovery contained the name, telephone number, and address of Ms. Williams's boyfriend's mother, PCRA counsel admitted he did not know the discovery contained this information.[93]

15

When asked whether trial counsel could have adduced Ms. Williams's statements through Detective Venson at the second trial as an admission under oath, PCRA counsel explained he did not review the issue because Mr. Rapley did not specifically raise the issue.[94]

## II.  Analysis

Mr. Rapley *pro se* asserts three grounds for *habeas* relief: Judge Trent violated his right to due process by improperly considering at sentencing the fact Mr. Rapley chose to exercise his constitutional right to a jury trial; his appellate counsel provided ineffective assistance by failing to argue Judge Trent violated Pennsylvania Rule of Criminal Procedure 704; and trial counsel provided ineffective assistance by failing to conduct an appropriate investigation to locate Ms. Williams and secure her testimony for trial. In his counseled supplemental *habeas* petition, Mr. Rapley asserts three additional claims. Trial counsel provided ineffective assistance by: moving *in limine* to preclude Ms. Williams's out of court statements at the second trial; and failing to introduce expert testimony criticizing the credibility of eyewitness identifications. Finally, Mr. Rapley asserts PCRA counsel provided ineffective assistance by failing to raise certain legal issues in the amended PCRA petition.

The Commonwealth argues Mr. Rapley failed to exhaust his due process claim in state court and Mr. Rapley misconstrued Judge Trent's statements at sentencing. The Commonwealth argues the state court reasonably applied federal law in finding Mr. Rapley's appellate counsel did not act ineffectively by failing to raise the Rule 704 argument on direct appeal. The Commonwealth argues Mr. Rapley failed to exhaust his trial counsel ineffective assistance claim. The Commonwealth finally argues the three new claims raised in Mr. Rapley's supplemental petition are time barred.

### A. Mr. Rapley's due process claim based on Judge Trent's sentence and ineffective assistance claim based on trial counsel's failure to investigate and call Ms. Williams as a witness at trial are procedurally defaulted.

Mr. Rapley argues Judge Trent violated his right to due process by considering at sentencing the fact he exercised his right to a jury trial. The Commonwealth argues Mr. Rapley's claim is factually and legally distinct from his claim raised in state court and is procedurally defaulted. Alternatively, the Commonwealth argues the claim lacks merit because the trial court did not punish Mr. Rapley for defending his case to completion through a jury trial.

Mr. Rapley also argues trial counsel provided ineffective assistance by failing to investigate Ms. Williams and to call Ms. Williams to testify at trial. Mr. Rapley claims Ms. Williams, a witness to the shooting, would have testified he did not shoot Mr. Wilson. The Commonwealth argues Mr. Rapley's claim is procedurally defaulted because he failed to raise the argument in the amended PCRA petition. Mr. Rapley argues his claim is not procedurally defaulted because he raised the argument in his *pro se* PCRA petition but PCRA counsel provided ineffective assistance by failing to incorporate the argument in the amended PCRA petition.

### 1. Mr. Rapley's due process claim is legally distinct from his state law abuse of discretion claim raised in state court and is procedurally defaulted.

To avoid a procedural default bar, Mr. Rapley must show he exhausted his claim in state court. Mr. Rapley must demonstrate he "fairly presented" his claim in state court.[95] A federal *habeas* claim is "fairly presented" when the claim is "substantially equivalent" to the claim made in state court.[96] For a claim to be "substantially equivalent" the relevant inquiry is whether Mr. Rapley presented the same facts and legal theory in state court.[97]

The Commonwealth argues Mr. Rapley's claim is factually distinct from his claim raised in state court because the claim he presents today is only one component of a three part state law abuse of discretion claim brought in state court. In state court, Mr. Rapley argued Judge Trent committed an abuse of discretion by improperly punishing him for exercising his constitutional right to a jury trial. As part of his claim in state court, Mr. Rapley alleged two other grounds of abuse of discretion – Judge Trent imposed an unduly harsh and manifestly excessive sentence and Judge Trent failed to consider mitigation evidence. Mr. Rapley's decision to narrow his claim in his *habeas* petition does not negate the fact he raised a claim based on the same facts in state court. Mr. Rapley's claim in his *habeas* petition is not factually distinct from his state court claim.

Mr. Rapley's due process claim is legally distinct from his state law abuse of discretion claim raised in state court. In state court, Mr. Rapley presented his sentencing claim under an abuse of discretion theory under Pennsylvania state law. Mr. Rapley argued Judge Trent abused his discretion by considering at sentencing the fact Mr. Rapley exercised his constitutional right to a jury trial. Mr. Rapley argued Judge Trent improperly deviated from the sentencing guidelines without offering sufficient justifications. Judge Trent concluded he provided adequate reasons for aggravating Mr. Rapley's sentence and did not abuse his discretion, citing the egregiousness of Mr. Rapley's acts and his lack of remorse and acceptance of responsibility.[98] The Superior Court characterized Mr. Rapley's claim as "a challenge to the discretionary aspects of sentencing."[99] The Superior Court concluded Judge Trent did not abuse his discretion and imposed a reasonable sentence.[100] Neither court analyzed Mr. Rapley's claim under a due process framework.

Mr. Rapley asserted a state law abuse of discretion claim in state court and both state courts concluded Judge Trent did not abuse his discretion in imposing a sentence outside of the guidelines. Mr. Rapley cannot turn his state law abuse of discretion claim into a federal claim by asserting a violation of due process for the first time in federal court.[101] Mr. Rapley's failure to raise a constitutional due process claim in his state proceedings is fatal to his claim today. Mr. Rapley's claim Judge Trent violated due process by punishing him for exercising his right to a jury trial is procedurally defaulted.

### 2. Mr. Rapley's ineffective assistance claim based on trial counsel's failure to investigate and call Ms. Williams as a witness lacks "some merit" under *Martinez* and is procedurally defaulted.

To demonstrate an ineffective assistance claim under *Strickland*, Mr. Rapley must prove (1) counsel "made errors so serious that counsel was not functioning as counsel guaranteed . . . by the Sixth Amendment" and (2) the errors resulted in actual prejudice to the petitioner.[102] PCRA counsel did not raise an ineffectiveness argument in the amended PCRA petition. "Ordinarily, this procedural default would constitute an adequate and independent state law ground for the Superior Court's decision and would bar our review."[103] But a procedural default may be "excused when the petitioner can establish both 'cause for the default' and 'actual prejudice' resulting from the failure of the state court to hear the claim."[104] The United States Supreme Court in *Martinez v. Ryan* outlined an avenue to show cause for PCRA counsel's failure to raise an ineffective assistance of counsel claim in a collateral proceeding.[105] This avenue is available if "(1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland* and (2) the underlying ineffective assistance of trial counsel claim is a 'substantial one', which is to say 'the claim has some merit.'"[106] In *Martinez*, the Supreme Court compared the second prong to the test used for deciding whether it is

19

appropriate to issue a certificate of appealability, as outlined in *Miller-El v. Cockrell*.[107]  In *Miller-El*, the Supreme Court explained a prisoner seeking a certificate of appealability must prove reasonable jurists would find his claim debatable.[108]

Mr. Rapley's ineffective assistance claim based on trial counsel's failure to investigate, to locate, and to call Ms. Williams as a witness at trial is procedurally defaulted because the claim lacks "some merit" under *Martinez*.

To succeed on his ineffective assistance claim based on the failure to investigate and call a witness, Mr. Rapley must show "(1) the witness existed; (2) the witness was available; (3) counsel know of, or should have known of the existence of the witness; (2) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to have denied him or her a fair trial."[109]  "Further, ineffectiveness for failing to call a witness will not be found where a defendant fails to provide affidavits from the alleged witnesses indicating availability and willingness to cooperate with the defense."[110]  Our court of appeals has found a petitioner fails to establish prejudice in a failure to investigate and call a witness claim where the petitioner fails to adduce sworn testimony from the potential witness because a court cannot speculate whether the witness would have testified on the petitioner's behalf and what the testimony would have been.[111]

Mr. Rapley has not adduced evidence of Ms. Williams's availability to testify at trial and whether she would testify for the defense.  Absent an affidavit or sworn testimony from Ms. Williams demonstrating her availability to testify at trial, her willingness to testify on Mr. Rapley's behalf, and the substance of her testimony, Mr. Rapley cannot show prejudice under *Strickland* and reasonable jurists would not find the claim debatable.  Without adducing evidence

of prejudice, Mr. Rapley's claim lacks "some merit" and Mr. Rapley's procedural default is not excused under *Martinez*.

### B. Mr. Rapley's ineffective assistance claim based on trial counsel's failure to adduce expert evidence on the unreliability of eyewitness testimony fails as untimely but the ineffectiveness claim based on trial counsel's motion *in limine* is timely.

In his counseled supplemental *habeas* petition, Mr. Rapley claims trial counsel provided ineffective assistance by failing to adduce expert evidence regarding the unreliability of Mr. Wilson's eyewitness testimony and identification of Mr. Rapley. Mr. Rapley cites scholarly sources identifying potential flaws in eyewitness testimony and identifications. Mr. Rapley also claims his PCRA counsel provided ineffective assistance by failing to raise these claims in the amended PCRA petition. The Commonwealth argues this claim is untimely because Mr. Rapley raises them nearly three years after filing his *pro se habeas* petition and the claims do not relate back. The Commonwealth also argues Mr. Rapley's claim is procedurally defaulted because he failed to raise these arguments in the amended PCRA petition. Mr. Rapley argues his procedural default is excused under *Martinez* because he raised the argument in his *pro se* PCRA petition but his appointed PCRA counsel provided ineffective assistance by failing to incorporate the argument in the amended PCRA petition.

Mr. Rapley also argues trial counsel provided ineffective assistance by moving *in limine* at the second trial to exclude Ms. Williams's statements to the police detectives. The Commonwealth argues this claim is untimely and is time barred.

Congress imposes a one year statute of limitations period to *habeas* claims.[112] Habeas Corpus Rule 2 mandates petitioners to "specify all the grounds for relief available" in their petition.[113] Habeas Corpus Rule 12 provides the Federal Rules of Civil Procedure may be applied to *habeas* proceedings to the extent they are not inconsistent with any applicable statute

21

or rule.[114] *Habeas* petitions may be amended or supplemented to the extent provided in the rules of civil procedure applicable to civil actions.[115] Federal Rule of Civil Procedure 15 governs the amendment and relation back of a habeas petition.[116] "Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'"[117]

In *Mayle v. Felix*, the Supreme Court held an amended *habeas* petition does not relate back when it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."[118] Claims asserted after the one year limitations period do not relate back simply because they relate to the same trial, conviction, or sentence.[119] "So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."[120]

### 1. The ineffectiveness argument based on trial counsel's failure to adduce expert evidence at trial is untimely.

Mr. Rapley claims his trial counsel provided ineffective assistance by failing to present expert evidence at trial regarding the "inherent unreliability" of Mr. Wilson's eyewitness testimony and identification of Mr. Rapley.[121] Mr. Rapley cites scholarly articles claiming eyewitness identifications and testimony are unreliable because (1) "the correlation between identification accuracy and confidence in identification judgments is weak"; (2) the time delay between the date of the incident and the identification; and (3) "weapon focus" distracts an eyewitness and draws their eye to the weapon in use rather than the weapon holder's person.[122] Mr. Rapley acknowledges his trial counsel offered argument in her closing statement regarding the potential flaws in Mr. Wilson's eyewitness testimony.[123] Mr. Rapley describes Mr. Wilson's identification of him as the gunman as "the lynch pin of the prosecution's case" and trial counsel acted deficiently in not offering expert evidence to counter Mr. Wilson's testimony.[124] Mr.

Rapley argues the prejudice prong of *Strickland* is satisfied because the expert evidence may have persuaded the jury he is not guilty.

Mr. Rapley's newly asserted ineffective assistance claim does not relate back to his *pro se habeas* petition because the claim is different in "time and type" to the claims asserted in his original petition. The fact Mr. Rapley asserted an ineffective assistance claim against trial counsel in his *pro se habeas* petition is insufficient alone to relate back Mr. Rapley's new ineffective assistance claim.[125] We assess whether the new claim is "tied to a common core of operative fact" of the original claims to determine whether relation back is in order.[126] Mr. Rapley's *pro se habeas* petition asserts two claims relating to his sentencing and one claim relating to his trial counsel's pre-trial investigation into Ms. Williams and her pre-trial motion to exclude Ms. Williams's out of court statements. The factual basis of Mr. Rapley's ineffective assistance claim relates to his trial counsel's pre-trial conduct.

Mr. Rapley's newly asserted claim arises from different operative facts. Mr. Rapley's new counseled claim is based upon his trial counsel's failure during trial to attack Mr. Wilson's eyewitness testimony with expert evidence. Mr. Rapley's claim is also distinguishable because it relates to the presentation of expert evidence during trial. Mr. Rapley's *pro se habeas* petition does not make reference to the presentation of expert evidence regarding the reliability of eyewitness testimony or the reliability of Mr. Wilson's eyewitness testimony generally. Claims relating to trial counsel's pre-trial failures to conduct a sufficient investigation into the location of a witness and to exclude certain testimony are different in "time and type" from a claim relating to the presentation of expert testimony during trial attacking the credibility of the victim's account of events. Mr. Rapley's newly asserted ineffective assistance claim based on

trial counsel's failure to offer expert testimony at trial does not relate back to his *pro se habeas* petition and is time barred.

It is unclear from Mr. Rapley's supplemental petition whether he claims a separate ineffective assistance claim against his PCRA counsel for failing to raise the expert evidence argument in the PCRA proceedings or whether he includes the argument to counter a procedural default argument from the Commonwealth under *Martinez*. Either theory fails. Because Mr. Rapley's underlying ineffective assistance claim based on the failure to present expert evidence is timed barred, we need not assess whether Mr. Rapley's claim is excused from the state court exhaustion requirements under *Martinez*. Further, under the *habeas* statute, Mr. Rapley may not assert an independent ineffective assistance claim based on PCRA counsel's conduct during collateral proceedings in state court.[127] We dismiss Mr. Rapley's ineffective assistance claim based on PCRA's counsel's failure to raise the expert evidence argument in the amended PCRA petition.

### 2. Mr. Rapley's ineffective assistance claim based on trial counsel's motion *in limine* to exclude Ms. Williams's statements relates back to his original petition.

In his *pro se* 2254 petition, Mr. Rapley asserts trial counsel provided ineffective assistance by "failing to investigate and present the testimony" of Ms. Williams at trial.[128] Mr. Rapley claimed had trial counsel conducted an adequate investigation into Ms. Williams she would have located Ms. Williams.[129] Mr. Rapley claimed the outcome of his second trial would have been different had Ms. Williams testified because Ms. Williams made statements to the police identifying another man as the gunman.[130] Mr. Rapley cited to the fact trial counsel adduced Ms. Williams's statements at the first trial through the detectives and found him not guilty of attempted murder and deadlocked on remaining charges.[131]

In Mr. Rapley's counseled supplemental *habeas* petition, he argues trial counsel provided ineffective assistance by excluding Ms. Williams's identification at the second trial by moving *in limine* with the consent of the Commonwealth.[132] The Commonwealth argues this newly asserted claim does not relate back to Mr. Rapley's *pro se* petition and is time barred because Mr. Rapley failed to raise the claim within the one year limitations period under Section 2254.

Mr. Rapley's newly asserted ineffective assistance claim is raised beyond the one year limitations period under Section 2254. But Mr. Rapley's ineffective assistance claim relates back to his timely *pro se habeas* petition. Mr. Rapley's ineffective assistance claim is tied to a common core of operative facts founding his original ineffective assistance claim against trial counsel and is not different in "time and type" to his original petition.[133] Both claims relate to trial counsel's failure to adduce Ms. Williams's statements at the second trial. Although Mr. Rapley's original petition focuses on Ms. Williams's presence at trial to adduce her statements and the supplemental petition focuses on introducing Ms. Williams's statements through the testimony of the detectives, both claims arise from trial counsel's conduct in adducing Ms. Williams's identification of a different person as the gunman.

In his *pro se habeas* petition, Mr. Rapley specifically cites to the fact trial counsel adduced Ms. Williams's statements at the first trial, but did not do so at the second trial. Trial counsel adduced Ms. Williams's statements at the first trial through cross examination of the detectives. Further, both claims focus on trial counsel's pre-trial conduct relating to Ms. Williams's statements. Mr. Rapley's *pro se* petition provided the Commonwealth fair notice he based his argument on the trial counsel's failure to adduce Ms. Williams's identification of a different man as the gunman at the second trial. Mr. Rapley's ineffective assistance claim based

25

on trial counsel moving *in limine* to exclude Ms. Williams's statements at the second trial relates back to his *pro se* petition and is timely.

### C. The ineffective assistance claim based on trial counsel's motion *in limine* in the second trial is procedurally defaulted and the default is not excused under *Martinez.*

Mr. Rapley argues his trial counsel provided ineffective assistance by moving *in limine* at the second trial to exclude Ms. Williams's statements to the police detectives. The Commonwealth argues Mr. Rapley's claim is procedurally defaulted because he failed to raise the argument in the amended PCRA petition. Mr. Rapley argues his procedural default is excused under *Martinez* because he raised the argument in his *pro se* PCRA petition but his appointed PCRA counsel provided ineffective assistance by failing to incorporate the argument in the amended PCRA petition.

Under the Supreme Court's seminal teachings in *Strickland v. Washington*, Mr. Rapley must show (1) counsel "made errors so serious that counsel was not functioning as counsel guaranteed . . . by the Sixth Amendment" and (2) the errors resulted in actual prejudice to the petitioner.[134]

To excuse the procedural default of failing to raise this ineffective assistance claim in state court, Mr. Rapley argues the default is excused under *Martinez*. To excuse the default under *Martinez*, Mr. Rapley must show PCRA counsel provided ineffective assistance by failing to argue trial counsel provided ineffective assistance by moving *in limine* to exclude Ms. Williams's statements at the second trial and the trial counsel ineffectiveness claim has "some merit."[135] Because the merit of Mr. Rapley's trial counsel ineffectiveness claim informs whether PCRA counsel provided ineffective assistance in failing to argue trial counsel provided ineffective assistance, we assess Mr. Rapley's trial counsel ineffectiveness claim first.[136]

**1. Even assuming trial counsel acted objectively unreasonably by moving *in limine* to exclude Ms. Williams's statements, the unreasonable conduct did not prejudice Mr. Rapley as the statements are hearsay.**

Under the first prong of *Strickland*, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."[137] "[A] court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance."[138] In this analysis, we must be "highly deferential" in evaluating an attorney's performance "so as to diminish 'the distorting effects of hindsight.'"[139] "Thus, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[140] Our court of appeals recognized the Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[141]

For example, in *Ross v. District Attorney for Allegheny Cnty.*, our court of appeals found counsel's performance fell below an objective standard of reasonableness where counsel failed to adduce impeachment evidence of a witness's *crimen falsi* conviction for making a false report to law enforcement and where "[t]here [was] no apparent strategic reason that might explain or excuse counsel's mistake."[142] In *Miller v. Beard*, the court found counsel's failure to consult with a forensic expert to rebut the prosecution's rape evidence violated *Strickland* because "trial counsel did not have a reasonable basis when he chose not to investigate the rape charge or consult with an expert."[143] In *Breakiron v. Horn*, our court of appeals described counsel's actions as objectionably unreasonable where counsel failed to request a jury instruction for theft, leaving the defendant in an "all-or-nothing" situation between a robbery conviction or acquittal, despite the defense counsel's trial theory of conceding theft but denying the defendant

committed robbery.[144]   The court found "no strategic reason" for conceding theft but not requesting a theft instruction, exposing the defendant to a substantial risk of conviction of robbery.[145]   The court concluded "under the circumstances, no reasonable counsel would have failed to request that instruction."[146]   In *Gregg v. Superintendent Rockview SCI*, the court found counsel's conduct amounted to a "constitutionally deficient performance" where counsel failed to investigate into a potential alibi witness and to ensure another alibi witness's attendance at trial through a trial subpoena.[147]   The court concluded counsel's decision to let the "unreliable teenage" key defense witness self-report to trial, despite previously not showing up to a pre-trial interview, fell below "the minimum threshold of competent assistance."[148]   The court also cited the fact counsel waited until the morning of trial to contact the alibi witness to request his attendance the same day.[149]   With respect to counsel's failure to secure the other alibi witness's attendance at trial by subpoena, the court explained counsel "offered no principled or strategic reason for his failure to do so . . . instead asserting that it is not generally his office's practice to subpoena a witness who appears willing to testify."[150]   The court found counsel's rationale "insufficient to justify counsel's failure."[151]

In the middle of the first trial, the Commonwealth dropped on trial counsel the information Ms. Williams identified a man different from Mr. Rapley as the gunman and provided the photo array and photo Ms. Williams identified as depicting the gunman. Trial counsel took steps based on reason and strategy in response to this newly acquired information, up until the start of the second trial. First, trial counsel immediately moved for mistrial. Trial counsel argued the Commonwealth committed a *Brady* violation by withholding exculpatory evidence.    Trial counsel's characterization of Ms. Williams's statements as exculpatory is important to our analysis as it provides the weight trial counsel placed on the evidence. After

28

Judge Trent denied her motion for mistrial, trial counsel skillfully adduced Ms. Williams's identification on cross examination of Detective Venson, over the Commonwealth's objection.

After the jury returned a not guilty verdict on the attempted murder charge and deadlocked on the remaining charges at the first trial, trial counsel immediately moved to compel all oral and written statements and all information the Commonwealth possessed regarding Ms. Williams. Trial counsel also moved to compel an interview with Detective Venson regarding his interactions with Ms. Williams. Judge Trent granted the uncontested motion, and trial counsel interviewed Detective Venson. Trial counsel sought a mistrial at the first trial and sought further information relating to Ms. Williams's interactions with police based on sound reason and strategy.

Immediately before the start of evidence at the second trial, trial counsel made a sharp u-turn. At the start of the second trial, trial counsel moved *in limine* with the Commonwealth's consent to exclude Ms. Williams's statements. Trial counsel moved to exclude the same evidence she characterized as exculpatory at the first trial and the same evidence she argued founded a *Brady* violation. Judge Trent granted the motion excluding Ms. Williams's out of court statements. Under *Strickland*, trial counsel must act within an objective standard of reasonableness. As in *Ross* and *Breakiron*, we assess whether there is a reasonable strategic reason for trial counsel's actions at the start of the second trial.

### a. Trial counsel acted deficiently by moving *in limine* to exclude Ms. Williams's statements.

On its face, it is unclear why trial counsel would move to exclude evidence of an eyewitness identifying a man different from Mr. Rapley as the gunman, particularly where trial counsel adduced the same evidence at the first trial resulting in a not guilty verdict and deadlocked jury on the remaining charges. At our evidentiary hearing, trial counsel could not

29

definitively explain why she moved *in limine* to exclude Ms. Williams's statements at the second trial. But trial counsel offered her best guess as to why she offered the motion. Trial counsel explained she feared Detective Venson would tell the jury Ms. Williams pointed him to Mr. Rapley. Trial counsel also explained she did not know how Mr. Rapley's photo ended up in a photo array. Finally, trial counsel explained she wanted to adduce Ms. Williams's identification but did not want Ms. Williams's recant of her identification to come into evidence.

Trial counsel's fear is unsupported by Detective Venson's testimony at the first trial and is directly contradicted by Detective Venson's representations at his interview with trial counsel between the two trials. At the first trial, Detective Venson did not testify Ms. Williams identified Mr. Rapley. Detective Venson testified Ms. Williams identified a person who did not match the description of Mr. Rapley. Detective Venson never testified Ms. Williams pointed him in the direction of Mr. Rapley. During the interview, Detective Venson confirmed Ms. Williams never identified Mr. Rapley as the gunman or gave him Mr. Rapley's name. Trial counsel emphasized in bold type Detective Venson's representation Ms. Williams never identified or provided Mr. Rapley's name in her memorandum to Mr. Rapley's case file.

With respect to trial counsel's concern regarding how Mr. Rapley's photo ended up in a photo array, trial counsel must be referring to a different photo array from the array presented to Ms. Williams. During trial counsel's interview with Detective Venson, he explained the photo array shown to Ms. Williams did not include Mr. Rapley's photo. But at trial, Detective Venson testified Mr. Wilson identified Mr. Rapley in a photo array. But with Detective Venson never having testified to Ms. Williams directing him to Mr. Rapley and Detective Venson's confirmation Ms. Williams never identified or provided Mr. Rapley's name, trial counsel's

30

concern Detective Venson would attribute to Ms. Williams the presence of Mr. Rapley's photo in any array is unfounded.

With respect to trial counsel wanting to adduce Ms. Williams's identification but not her later communications with Detective Venson and Detective Kerwin, there is no strategic reason to exclude Ms. Williams's identification on this basis. The Commonwealth argues trial counsel acted reasonably and strategically to exclude Ms. Williams's statements because the evidence is a "double-edged sword." The Commonwealth argues Ms. Williams recanting on her identification is harmful to the defense. We do not see how Ms. Williams's statements are a double-edged sword harming Mr. Rapley. Critically, Ms. Williams never identified Mr. Rapley as the gunman. Ms. Williams's going back on her identification did not implicate Mr. Rapley. Ms. Williams never identified Mr. Rapley as the gunman and her recanting on her identification does not present a double edge harming Mr. Rapley. At its worst, it is an equal counter to her identification.

On this record, we could readily find trial counsel did not act within an objective standard of reasonableness. Without a strategic or reasonable basis to exclude Ms. Williams's statements at the second trial, trial counsel did not surpass the minimum threshold of competent assistance guaranteed by the Sixth Amendment. But the Supreme Court in *Strickland* requires more than a finding the lawyer acted unreasonably. In applying this second prong, we find no basis for prejudice for moving to exclude inadmissible evidence.

> **b. Trial counsel's deficient conduct did not prejudice Mr. Rapley because trial counsel excluded evidence which would not have been admissible at the second trial absent an extraordinary impeachment opportunity or Ms. Williams showing up.**

Under *Strickland's* second prong, Mr. Rapley must show his counsel's errors resulted in prejudice. To show prejudice, Mr. Rapley must "demonstrate 'a reasonable probability that, but

31

for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"[152] A showing of prejudice requires a substantial, not a conceivable, likelihood of a different result.[153] In assessing prejudice, we consider the totality of the evidence before the judge or jury.[154] "Surmounting *Strickland*'s high bar is never an easy task."[155]

Our court of appeals has twice recently found a lack of prejudice when defense counsel did not impeach a witness with known admissible evidence. In *Ross*, our court of appeals found while defense counsel's failure to use a *crimen falsi* conviction to impeach a material witness constituted deficient conduct, this deficiency did not demonstrate a reasonable probability that, but for the error, the result of the trial would have been different.[156] In *United States v. Travillion*, the defendant argued prejudice because, had his lawyer used earlier admissions or impeachment evidence, he would have a reasonable probability the jury would have acquitted or deadlocked on a charge.[157] Our court of appeals affirmed the district court's finding even if the counsel's failure to cross examine a witness with inconsistent or impeachment evidence satisfied the first *Strickland* prong of deficient lawyering, the collective trial evidence showed the outcome of the trial would not have been different.[158]

We are not evaluating the failure to introduce admissible evidence. We are addressing Mr. Rapley's counsel's motion *in limine* to preclude hearsay evidence. This case is unique because we have two trials ending in two different results and Mr. Rapley cites one material difference: Ms. Williams's statements to the police officers. At the first trial, Mr. Rapley's counsel skillfully worked her way around the hearsay objection to adduce evidence of Ms. Williams's identification. Trial one ended, after three days of deliberation, with the jury finding Mr. Rapley not guilty of attempted murder and deadlocking on remaining charges. At the

32

second trial, Mr. Rapley's trial counsel excluded Ms. Williams's identification. Trial two ended in the jury finding Mr. Rapley guilty on all charges tried after two hours of deliberation. Similar to the first trial, the bulk of the testimony adduced at the second trial came from Mr. Wilson describing the events of August 5 and Detective Venson testifying to the police investigation into the shooting. Other than a different jury, the glaring difference between the two trials is the exclusion of Ms. Williams's identification and other conversations with Detectives Venson and Kerwin.

There are only three witnesses to the August 5 shooting: Mr. Wilson, Mr. Rapley, and Ms. Williams. Mr. Wilson identified Mr. Rapley as the gunman in an array during the police investigation and at trial. Although Mr. Rapley did not testify at the second trial, at the first trial Mr. Rapley testified and denied shooting Mr. Wilson. According to Detectives Venson and Kerwin, Ms. Williams initially identified a different person as the gunman. Had trial counsel adduced Ms. Williams's identification at the second trial, Ms. Williams's identification would have created a he-said-she-said scenario, just like the first trial. Ms. Williams's identification became even more critical for trial counsel to adduce at the second trial because Mr. Rapley did not testify and deny he shot Mr. Wilson.

While we recognize the potential evidentiary impact of Ms. Williams identifying a person different from Mr. Rapley as the gunman, trial counsel's motion *in limine* excluded inadmissible hearsay at the second trial. Even if trial counsel had not moved *in limine* to exclude the statements, the statements would not have come into evidence, absent Ms. Williams appearing, the Commonwealth failing to object to trial counsel's attempt to adduce Ms. Williams's statements, or Judge Trent overruling the objection. Again, these conceivably could have

33

occurred but we cannot find these conceivable possibilities equate to the required substantial chance the outcome of the second trial would be different.

We appreciate it is conceivable trial counsel would have been able to adduce Ms. Williams's statements at the second trial as she did at the first trial, if she did not move *in limine* to exclude Ms. Williams's statements. It is conceivable the Commonwealth could have failed to raise a hearsay objection at the second trial, if trial counsel attempted to adduce Ms. Williams's statements on cross examination of Detective Venson, as she did at the first trial. Absent the motion *in limine*, it is also conceivable Detective Venson could have volunteered information regarding Ms. Williams's identification at the second trial without trial counsel asking a question which called for hearsay. And it is conceivable Ms. Williams would have been found in the next few days of trial after not being found by any party after months of effort. These possibilities may create a "conceivable" chance the outcome of the second trial would have been different for Mr. Rapley, but speculating as to the possibility of trial counsel adducing inadmissible evidence or a witness volunteering and opening the door to Ms. Williams's hearsay statements does not elevate a "conceivable" chance to a "substantial" chance the outcome of the second trial would have been different.

We cannot ignore the statements trial counsel excluded are inadmissible hearsay. We found no legal authority supporting the conclusion Detective Venson's testimony at the first trial were admissions against the Commonwealth and excepted from the rule against hearsay under Pennsylvania law.[159] While prior inconsistent statements under oath are excepted from the rule against hearsay under Pennsylvania Rule of Evidence 803.1(1)(A), trial counsel would have had to adduce a prior inconsistent statement from Detective Venson regarding Ms. Williams's out of court statements. Trial counsel's questions baiting an inconsistent statement from Detective

34

Venson as to the substance of Ms. Williams's out of court identification would have called for hearsay.

Although trial counsel acted deficiently by moving *in limine* without strategic reason, her motion excluded inadmissible hearsay statements. We cannot find trial counsel's failure to adduce inadmissible evidence created a reasonable probability the outcome of the second trial would have been different. Although one can create hypotheticals in which trial counsel adduces Ms. Williams's statements at the second trial, absent the motion *in limine*, by catching the Commonwealth off guard and adducing Ms. Williams's hearsay statements without objection or a witness opening the door to Ms. Williams's statements, the exclusion of inadmissible evidence does not create a "substantial" likelihood the outcome of the second trial would have been different had trial counsel not moved *in limine*.

Nearly nine years passed since Judge Trent sentenced Mr. Rapley. During this time, Mr. Rapley litigated a direct appeal from his sentence and a collateral attack in state court and petitioned for *habeas* relief in federal court. Once here, Mr. Rapley faced several legal hurdles, including arguing his procedural default is excused under *Martinez* and his newly asserted ineffectiveness claim relates back to his *habeas* petition filed nearly three years ago. On the merits of his claim, Mr. Rapley successfully argued his trial counsel acted without reason in moving *in limine* to exclude Ms. Williams's statements at the second trial.

But under *Strickland*, deficient conduct alone does not violate the Sixth Amendment. Trial counsel's exclusion of inadmissible hearsay did not create a reasonable probability the outcome of the second trial would have been different. We appreciate Mr. Rapley went through two trials, each ending in very different results.[160] Both trials largely composed of Mr. Wilson testifying to the events of August 5, 2007 and his identification of Mr. Rapley and Detective

Venson testifying to the investigation into the shooting. Although the jury heard Ms. Williams's statements at the first trial, but not the second, we cannot speculate as the juries' reasoning behind their different verdicts. We may reach a different result had the statements trial counsel excluded been admissible under the Pennsylvania Rules of Evidence.[161] But we cannot find prejudice based on speculation, even if conceivable, trial counsel could have adduced inadmissible evidence at the second trial.

Without a showing of prejudice, Mr. Rapley's underlying ineffective assistance claim lacks "some merit" under *Martinez*.

### 2. PCRA counsel did not violate *Strickland* by failing to raise the ineffectiveness claim.

PCRA counsel did not violate *Strickland* by failing to raise Mr. Rapley's *pro se* ineffective assistance argument based on trial counsel's motion *in limine* in the amended PCRA petition.

At our evidentiary hearing, PCRA counsel confirmed he did not incorporate Mr. Rapley's ineffective assistance argument into the amended PCRA petition because PCRA counsel could not locate Ms. Williams to secure her testimony for an evidentiary hearing on the PCRA petition. PCRA counsel believed he would not be able to show prejudice under *Strickland* without Ms. Williams's testimony.

PCRA counsel's reasoning may have been a reasonable ground to exclude Mr. Rapley's ineffectiveness argument to the extent it relies on trial counsel's failure to investigate and call Ms. Williams as witness at trial, but it does not address Mr. Rapley's argument relating to the motion *in limine*. Unlike the investigation claim where we do not know what Ms. Williams would have said at trial or her availability to testify at trial, we do know exactly what statements the consented motion *in limine* excluded. Mr. Rapley's first trial provides the answer. PCRA

36

counsel did not need Ms. Williams to testify to what statements trial counsel adduced at the second trial and therefore did not need Ms. Williams to show prejudice under *Strickland*. PCRA counsel only needed the transcript of the first trial to show what statements trial counsel excluded. PCRA counsel did not have a reasonable basis and did not follow a sound strategy in excluding Mr. Rapley's *pro se* argument.

But PCRA counsel's failure to incorporate Mr. Rapley's ineffectiveness argument in the amended PCRA petition did not prejudice Mr. Rapley. Mr. Rapley successfully argued his trial counsel acted deficiently by moving *in limine* to exclude Ms. Williams's statements at the second trial, but trial counsel's deficient conduct did not prejudice Mr. Rapley. Trial counsel did not act ineffectively by excluding inadmissible evidence at the second trial and PCRA counsel cannot be ineffective for failing to raise the ineffectiveness claim.

Because trial counsel's deficient conduct did not prejudice Mr. Rapley and PCRA counsel cannot be faulted for failing to raise a failing ineffectiveness argument, Mr. Rapley's procedural default is not excused under *Martinez*.

### D. Mr. Rapley's ineffective assistance claim based on his appellate counsel's failure to argue on direct appeal Judge Trent violated Pa. R. Crim. P. 704 fails because the state courts did not unreasonably apply federal law.

Mr. Rapley argues his appellate counsel provided ineffective assistance by failing to argue on direct appeal the trial court violated Pa. R. Crim. P. 704 by failing to sentence him within 90 days after his conviction. The Commonwealth argues the state courts reasonably applied federal law in finding Mr. Rapley's claim failed.

The *Strickland* standard is deferential to counsel and after a state court reviews an ineffectiveness claim, it becomes even harder for a petitioner to show ineffective assistance. Under the revised *habeas* statute, *habeas* relief is unavailable unless the state court's decision

37

"was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[162] Where a petitioner challenges the state court's application of federal law to an ineffective assistance claim, the question is not whether counsel's actions were reasonable.[163] The question becomes whether there is a reasonable argument counsel satisfied *Strickland*'s deferential standard.[164]

Mr. Rapley first raised this ineffective assistance claim in his *pro se* PCRA petition and Mr. Rapley's PCRA counsel incorporated the same argument in Mr. Rapley's amended petition. The court dismissed Mr. Rapley's petition without a hearing. In his 1925(a) opinion, Judge Trent explained Mr. Rapley "failed to make the minimum proffer to necessitate either relief or an evidentiary hearing."[165] The court concluded Mr. Rapley failed to establish counsel's ineffectiveness because Mr. Rapley did not qualify for relief under Rule 704.[166] The court acknowledged it sentenced Mr. Rapley beyond the 90 day deadline under Rule 704, but found "good cause for the minimal delay."[167] The jury returned its verdict on January 29, 2009 and the Judge Trent sentenced Mr. Rapley on June 30, 2009.[168] Mr. Rapley waived thirty-six days of delay for purposes of Rule 704.[169] The court calculated 116 days as the total time subject to Rule 704, meaning the court sentenced Mr. Rapley twenty-six days beyond the deadline.[170] The court explained scheduling conflicts and SCI Graterford's failure to transport Mr. Rapley to court for his April 7, 2009 sentencing hearing contributed to the delay.[171]

Apart from finding good cause for the delay, Judge Trent found Mr. Rapley failed to show prejudice resulting from the delay.[172] Mr. Rapley claimed the delay prevented his mother from providing a statement at sentencing.[173] Judge Trent rejected Mr. Rapley's bald argument his mother's absence from sentencing caused prejudice.[174] Judge Trent concluded appellate

38

counsel did not provide ineffective assistance by failing to assert a Rule 704 violation on direct appeal.[175]

The Pennsylvania Superior Court analyzed Mr. Rapley's claim in great detail. The Pennsylvania Superior Court affirmed Mr. Rapley's Rule 704 claim lacked merit and his ineffective assistance of counsel claim based on the alleged violation equally failed.[176] The Pennsylvania Superior Court found the twenty-six day sentencing delay excusable and unintentional.[177] Judge Trent initially scheduled Mr. Rapley's sentencing for March 17, 2009.[178] Due to a scheduling conflict, Judge Trent continued Mr. Rapley's sentencing until March 20, 2009.[179] Mr. Rapley waived the three day continuance for purposes of Rule 704.[180] Due to another scheduling conflict, Judge Trent continued Mr. Rapley's sentencing until April 7, 2009.[181] Despite the court issuing a writ for Mr. Rapley's transport from SCI Graterford to court for the April 7 hearing, the Department of Corrections failed to transport Mr. Rapley to the hearing.[182] The court rescheduled the hearing for May 28, 2009 but upon request by Mr. Rapley's counsel, the court continued the hearing until June 30, 2009.[183] Mr. Rapley waived the time delay between May 28 and June 30 for purposes of Rule 704.[184] Judge Trent sentenced Mr. Rapley on June 30.

The Pennsylvania Superior Court calculated a total of 152 days between Mr. Rapley's conviction and his sentencing, resulting in a 62 day delay beyond the 90 day deadline set by Rule 704.[185] The superior court characterized the delay as "relatively brief" but warranted further analysis.[186] The superior court reviewed the reasons for delay and concluded "any delay was either waived by [Mr. Rapley] or was excusable and unintentional."[187] Mr. Rapley waived a total of 36 days of delay resulting in a 26 day violation of Rule 704.[188] Citing the Department of Corrections failure to transport Mr. Rapley to the April 7 hearing and the trial court's full docket,

the superior court found good cause for the 26 day delay.[189] Alternatively, the superior court concluded Mr. Rapley failed to timely raise his Rule 704 claim since he asserted the claim after the delay ended.[190]

The Pennsylvania Superior Court also found Mr. Rapley failed to establish prejudice created by 26 day delay.[191] Mr. Rapley claimed he did not receive credit for time served between the jury verdict and his sentencing.[192] The superior court explained the trial court appropriately concluded "the prison system's ability to properly allocate time credit on this case is not affected by the passing of Rule 704's 90 day window."[193] The superior court also rejected Mr. Rapley's prejudice argument based on his mother's absence at sentencing. Mr. Rapley failed to identify how the delay resulted in his mother not being able to attend sentencing or how her testimony would have altered his sentence.[194] The superior court concluded Mr. Rapley's appellate counsel could not be ineffective for failing to raise a meritless claim.[195]

The state courts did not unreasonably apply federal law in finding Mr. Rapley's ineffective assistance of counsel claim lacked merit. Both the PCRA and appellate court found the twenty-six day delay excusable and unintentional. Without an underlying Rule 704 violation, the state courts did not unreasonably conclude Mr. Rapley's ineffective assistance of counsel claim equally failed for failing to establish ineffectiveness.

Even assuming *arguendo* we found the delay not excusable and unintentional, Mr. Rapley failed to show prejudice. Mr. Rapley claims his mother, who lives in South Carolina, could not attend his sentencing on June 30.[196] Mr. Rapley's bald assertion his mother's absence at sentencing prejudiced him is insufficient. At sentencing, Mr. Rapley's probation officer testified on his behalf.[197] Mr. Rapley also had his father, brother, sister, and girlfriend present to support him.[198] Critically, Mr. Rapley fails to identify how his mother's statement would have

40

altered his sentence. Without identifying how Mr. Rapley's mother's statement would have altered his sentence and considering Mr. Rapley had three other family members present at his sentencing, Mr. Rapley failed to establish prejudice.

The state courts did not unreasonably apply the *Strickland* factors finding Mr. Rapley's ineffective assistance claim lacked merit. Given the relatively brief excusable delay in Mr. Rapley's sentencing and Mr. Rapley's failure to offer evidence in support of his claim of prejudice, there is a reasonable argument Mr. Rapley's appellate counsel satisfied the *Strickland* standard. Mr. Rapley's ineffective assistance of counsel claim based on his appellate counsel's failure to argue a Rule 704 violation on direct appeal fails.

### E. We deny a certificate of appealability.

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complaint of arises out of process issued by a State court."[199] A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."[200] In *Slack v. McDaniel*, the Supreme Court held when a district court rejects constitutional claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[201] The Court further explained when a district court denies a *habeas* petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[202]

For the reasons detailed today, Mr. Rapley has not shown and we cannot find our holdings denying Mr. Rapley's non-defaulted constitutional claim challenging the state court's sentencing could be reasonably debated. Mr. Rapley has also not shown and we cannot find our conclusions barring his claims based on procedural default and statute of limitations would allow reasonable judges to debate the correctness of our rulings.

## III. Conclusion

Mr. Rapley's due process claims are procedurally defaulted because the claim is legally distinct to the state law abuse of discretion claim Mr. Rapley raised in state court. Mr. Rapley's newly raised ineffective assistance claim based on trial counsel's failure to adduce expert evidence on the unreliability of eyewitness testimony does not relate back to his *pro se habeas* petition and is time barred. Mr. Rapley's ineffective assistance claim based on trial counsel's motion *in limine* excluding Ms. Williams's statements at the second trial is procedurally defaulted and the default is not excused under *Martinez*. Finally, Mr. Rapley's ineffective assistance claim based on appellate counsel's failure to raise a Rule 704 argument fails because the state courts did not unreasonably apply federal law in finding the claim meritless. Mr. Rapley is not entitled to *habeas* relief.

---

[1] N.T. January 27, 2009 at pp. 153-55.

[2] *Id.*

[3] *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held a criminal defendant's due process rights are violated when the government fails to turn over evidence favorable to the defendant.

[4] N.T. October 6, 2008 at p. 84.

[5] *Id.* at p. 85.

[6] *Id.*

[7] *Id.* at pp. 95-96.

[8] *Id.* at p. 97.

[9] *Id.* at p. 96.

[10] *Id.* at p. 97.

[11] *Id.*

[12] *Id.*

[13] *Id.* at pp. 116-20.

[14] *Id.* at pp. 119-20.

[15] *Id.* at p. 122.

[16] *Id.*

[17] April 24, 2018 Evidentiary Hearing Exhibit R-7.

[18] N.T. April 24, 2018 at p. 57.

[19] *Id.*

[20] April 24, 2018 Evidentiary Hearing Exhibit R-8.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] N.T. January 27, 2009 at pp. 4-5.

[29] ECF Doc. No. 18.

[30] *Id.*

[31] *Id.*

[32] N.T. April 24, 2018 at p. 7.

[33] April 24, 2018 Evidentiary Hearing Exhibit R-1.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] N.T. April 24, 2018 at p. 27.

[38] *Id.*

[39] *Id.*

[40] April 24, 2018 Evidentiary Hearing Exhibit R-3.

[41] N.T. April 24, 2018 at pp. 64-65.

[42] *Id.* at p. 38.

[43] *Id.*

[44] *Id.*

[45] *Id.* at p. 17.

[46] *Id.* at p. 39.

[47] *Id.* at p. 66.

[48] April 24, 2018 Evidentiary Hearing Exhibit R-6.

[49] N.T. April 24, 2018 at p. 37.

[50] April 24, 2018 Evidentiary Hearing Exhibit R-4.

[51] N.T. April 24, 2018 at p. 40.

[52] *Id.*

[53] *Id.*

[54] *Id.* at p. 59.

[55] *Id.* at pp. 59-60.

[56] *Id.* at p. 60.

[57] *Id.* at p. 69.

[58] *Id.*

[59] ECF Doc. No. 11-3 at p. 4.

[60] ECF Doc. No. 11-4 at pp. 2-3.

[61] N.T. April 24, 2018 at p. 79.

[62] April 24, 2018 Evidentiary Hearing Exhibit P-6.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] April 24, 2018 Evidentiary Hearing Exhibit P-5.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] April 24, 2018 Evidentiary Hearing Exhibit P-3.

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] ECF Doc. No. 20-1 at pp. 2-3.

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] April 24, 2018 Evidentiary Hearing Exhibit P-4.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] N.T. April 24, 2018 at p. 82.

[85] *Id.*

[86] *Id.* at p. 103.

[87] *Id.* at p. 82.

[88] *Id.*

[89] *Id.* at p. 95.

[90] 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court defined the elements a petitioner must show to prove an ineffective assistance claim on a collateral attack of a conviction.

[91] N.T. April 24, 2018 at p. 97.

[92] *Id.* at p. 112.

[93] *Id.* at p. 113.

[94] *Id.* at pp. 108-10.

[95] *Duncan v. Henry*, 513 U.S. 364, 365 (1995).

[96] *Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989).

[97] *Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007).

[98] ECF Doc. No. 11-1 at pp. 46-48.

[99] ECF Doc. No. 11-2 at p. 5.

[100] *Id.* at pp. 8-10.

[101] *Cotton v. Wenerowicz*, No. 12-3103, 2014 WL 1396477, at *9-10 (E.D. Pa. Apr. 10, 2014) (finding due process claim legally distinct and procedurally defaulted as petitioner asserted in state court a claim based on an excessive sentence under a state law abuse of discretion theory).

[102] 466 U.S. 668, 687 (1984).

[103] *Kelly v. Superintendent Graterford SCI*, 719 F. App'x 153, 158 (3d Cir. 2017) (quoting *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014)).

[104] *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

[105] 566 U.S. 1, 14 (2012).

[106] *Kelly*, 719 F. App'x at 158 (quoting *Glenn*, 743 F.3d at 410).

[107] *Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

[108] *Miller-El*, 537 U.S. at 338.

[109] *Commonwealth v. Miner*, 44 A.3d 684, 687 (Pa. Super. Ct. 2012) (citing *Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008)).

[110] *Commonwealth v. Khalil*, 806 A.2d 415, 422 (Pa. Super. Ct. 2002) (citation omitted).

[111] *Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001).

[112] 28 U.S.C. § 2254(d)(1).

[113] Habeas Corpus Rule 2(c)(1).

[114] Habeas Corpus Rule 12.

[115] 28 U.S.C. § 2242.

[116] *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

[117] *Id.* at 655.

[118] 545 U.S. 644, 650 (2005).

[119] *Id.* at 662.

[120] *Id.* at 664.

[121] ECF Doc. No. 20 at p. 8.

[122] *Id.* at pp. 8-12.

[123] *Id.* at p. 8-9.

[124] *Id.* at p. 12.

[125] *See Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (citing *Mayle*, 545 U.S. at 664) (explaining court must assess whether both ineffective assistance claims are tied to common core of operative facts).

[126] *See Mayle*, 545 U.S. at 664.

[127] 28 U.S.C. § 2254(i).

[128] ECF Doc. No. 1 at p. 11.

[129] *Id.*

[130] *Id.* at pp. 11-12.

[131] *Id.*

[132] ECF Doc. No. 20 at p.7.

[133] *Mayle*, 545 U.S. at 650.

[134] 466 U.S. 668, 687 (1984).

[135] *Kelly*, 719 F. App'x at 158 (quoting *Glenn*, 743 F.3d at 410).

[136] *See Lambert v. Warden Greene SCI*, 861 F.3d 459, 469 (3d Cir. 2017) (explaining court cannot assess whether PCRA counsel acted deficiently or prejudiced petitioner without assessing the merits of petitioner's underlying trial counsel ineffectiveness claim).

[137] *Ross v. District Attorney of Allegheny Cnty.*, 672 F.3d 198, 210 (3d Cir. 2012) (citing *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).

[138] *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013) (citing *Strickland*, 466 U.S. at 690).

[139] *Id.* (citing *Strickland*, 466 U.S. at 689).

[140] *Id.*

[141] *Id.* (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

[142] *Ross*, 672 F.3d at 210.

[143] *Miller v. Beard*, 214 F. Supp. 3d 304, 338 (E.D. Pa. Oct. 5, 2016).

[144] *Breakiron v. Horn*, 642 F.3d 126, 138-39 (3d Cir. 2011).

[145] *Id.*

[146] *Id.*

[147] *Gregg v. Superintendent Rockview SCI*, 596 F. App'x 72, 77-78 (3d Cir. 2015).

[148] *Id.*

[149] *Id.*

[150] *Id.*

[151] *Id.*

[152] *Ross*, 672 F.3d at 210 (quoting *Harrington*, 562 U.S. at 105).

[153] *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)).

[154] *Id.* (quoting *Strickland*, 466 U.S. at 695).

[155] *Id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

[156] *Ross,* 672 F.3d at 210.

[157] 759 F.3d 281, 290 (3d Cir. 2014).

[158] *Id.* at 292.

[159] *Cf. United States v. Booker*, 375 F. App'x 225, 231 (3d Cir. 2010) (quoting *Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir. 1993)) ("Indeed, several courts, including ours, 'have held that statements by police officers or other law enforcement officials are not admissible on an admissions theory as substantive evidence against the sovereign in a criminal prosecution.'").

[160] *See Bey v. Superintendent Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017) (recognizing a hung jury in a first trial can support a finding an error on retrial prejudiced a convicted defendant).

[161] We cannot reach a conclusion on this speculation but are mindful of our court of appeals' holdings in *Ross* and *Travillion.*

[162] *Tucker v. Superintendent Graterford SCI*, 677 F. App'x 768, 774 (3d Cir. 2017) (quoting 28 U.S.C. § 2254).

[163] *Premo v. Moore*, 562 U.S. 115, 122 (2011) (quoting *Harrington v. Ritcher*, 562 U.S. 86, 105 (2011)).

[164] *Id.*

[165] *Comm. v. Rapley*, No. 51-CR-0041040-2007, 2014 WL 6401994 (C.P. Phila. Jun. 13, 2014).

[166] *Id.* Under Pa. R. Crim. P. 704, "sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or nolo contendere."

[167] *Id.*

[168] *Id.*

[169] *Id.*

[170] *Id.*

[171] *Id.*

[172] *Id.*

[173] *Id.*

[174] *Id.*

[175] *Id.*

[176] *Comm. v. Rapley*, No. 1083 EDA 2014, 2014 WL 10753689, at *5 (Pa. Super. Ct. Dec. 16, 2014).

[177] *Id.* at *4.

[178] *Id.* at *1.

[179] *Id.*

[180] *Id.*

[181] *Id.*

[182] *Id.*

[183] *Id.*

[184] *Id.*

[185] *Id.* at *3.

[186] *Id.*

[187] *Id.*

[188] *Id.* at *4.

[189] *Id.*

[190] *Id.*

[191] *Id.*

[192] *Id.*

[193] *Id.*

[194] *Id.*

[195] *Id.* at *5.

[196] ECF Doc. No. 1 at p. 8.

[197] N.T. June 30, 2009 at pp. 13-14.

[198] *Id.* at p. 10.

[199] 28 U.S.C. § 2253(c)(1).

[200] *Id.* § 2253(c)(2).

[201] 529 U.S. 473, 484 (2000).

[202] *Id.*